IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2024

**KANDY PAGE v. HOLLY CIKALO, ET AL.**

**Appeal from the Chancery Court for Overton County**
**No. 22-CV-11, 22-CV-10  Daryl A. Colson, Judge[1]**

_____

**No. M2023-00849-COA-R3-CV**

_____

This appeal arises from a finding of dependency and neglect and dismissal of adoption proceedings. Adoption petitioner contends that the chancery court lacked subject matter jurisdiction to address dependency and neglect, which the juvenile court had exclusive jurisdiction to hear. Concluding that the chancery court had exclusive jurisdiction over the adoption petitions, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JEFFREY USMAN, J., joined.

Melanie Lane, Jamestown, Tennessee, for the appellant, Kandy Page.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Clifton Wade Barnett, Assistant Attorney General for the appellees Tennessee Department of Children's Services; Holly Cikalo; Micah H., Sr.; and Kristen M.[2]

---

[1] Juvenile Court Judge of Overton County sitting by interchange. Overton County does not have a separate juvenile court but a general sessions court that operates with juvenile jurisdiction. *See* 2000 Tenn. Priv. Acts, Ch. 67. General sessions and juvenile judges may sit by interchange in circuit or chancery court if the General Assembly permits such by private act. *Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *5 n.5 (Tenn. Ct. App. Aug. 12, 2011); *see also* Tenn. Att'y Gen. Op. No. 19-14, 2019 WL 4568054, (Sept. 9, 2019) (citing *Lanphere*, 2011 WL 3566978, at *5). The relevant private act for Overton County, 2000 Tenn. Priv. Acts, Ch. 67, permits the general sessions and juvenile judge to sit by interchange for circuit or chancery courts regarding "domestic relations" cases—i.e., Title 36 cases. So the juvenile court judge could sit by interchange in chancery court for matters arising under section 36-1-116(k).

[2] This court ordered the appeal submitted for a decision without briefs on behalf of Holly Cikalo, Micah H., Sr., and Kristen M.  Gerald M.'s whereabouts were never ascertained during the proceedings.

Emily Wright, Livingston, Tennessee, Guardian *ad litem* for KrystaJade M.

Carley Darby, Cookeville, Tennessee, Guardian *ad litem* for Micah H., Jr.

**OPINION**

**I. BACKGROUND**

This case involves three minor children: KrystaJade M. ("KrystaJade"), Micah H., Jr. ("Micah Jr."), and Gwyndalynn Y. ("Gwyndalynn"); Gwyndalynn, for whom DCS filed a dependency and neglect ("D&N") petition, is not a subject of this appeal. Kandy Page is the grandmother of Gwyndalynn and Micah Jr.; she is the step-grandmother of KrystaJade. Holly Cikalo and Micah H., Sr. are Micah Jr.'s parents, and Kristen M. and Gerald M. are KrystaJade's parents.[3]

In February 2022, Ms. Page filed petitions in chancery court to terminate the parental rights of KrystaJade's and Micah Jr.'s parents and to adopt both children. At the time she filed the petitions, Ms. Page had custody of these children, having obtained legal custody of KrystaJade on October 4, 2016, and of Micah Jr. on November 14, 2017.

On May 12, 2022, the Tennessee Department of Children's Services ("DCS") received a referral that alleged KrystaJade was the victim of sexual abuse. A little under a month later, DCS, unaware of the pending adoption petitions, filed a juvenile court petition to declare KrystaJade, Micah Jr., and Gwyndalynn dependent and neglected. Upon learning of the adoption petitions, on June 23, 2022, pursuant to Tennessee Code Annotated section 36-1-116(k), DCS filed in each of the chancery court cases a "Complaint Offering Evidence Regarding Child's Best Interest and Requesting Emergency Ex-Parte Order for Custody," seeking custody of KrystaJade and of Micah Jr. The statute provides that DCS "shall have the right to intervene in the adoption proceeding at any time to present evidence as to the best interests of the child by filing a sworn complaint in the adoption proceeding." Tenn. Code Ann. § 36-1-116(k)(1). DCS alleged that KrystaJade had been sexually abused by her uncle, Charles Young, who admitted to law enforcement that he had repeatedly sexually abused KrystaJade for three years. The complaints provided, in part, that Ms. Page is Mr. Young's former mother-in-law, that Mr. Young resides on Ms. Page's property in a separate residence, that Ms. Page had been on notice of Mr. Young's sexual propensities since 2020, and that the children would not be safe in Ms. Page's care. DCS requested that the chancery court "find that it is in the best interest of [the children] that the matter be referred to the Juvenile Court of Overton County for adjudication of the dependency and

---

In order to protect the identity of the minors in this case, we have at times utilized initials instead of last names.

[3] Various spellings of the names of the parents appear throughout the record.

- 2 -

neglect petition[.]"

In response to the complaints, Ms. Page contended that DCS had failed to allege any facts that would rise to the level requiring the removal or establishing D&N facts as to Micah Jr. She asserted that no reason exists why Micah Jr. cannot safely remain in her home.

Based on DCS's complaints, however, pursuant to Tennessee Code Annotated section 36-1-116(k)(2), the chancery court entered emergency ex parte orders removing the children from Ms. Page's custody and placing them with Ms. Page's daughter, Sahvanna Clark. In a preliminary hearing on June 28, 2022, the chancery court found, in part, that probable cause had been demonstrated that removing the children was required; it was contrary to the children's best interests to remain in Ms. Page's custody; and that custody of the children would remain with Ms. Clark. Two months later, on August 25, 2022, the chancery court granted DCS's amended intervening complaint requesting that KrystaJade be placed in DCS custody due to ongoing mental health issues. This order was signed by the juvenile court judge sitting by interchange. On September 26, 2022, a hearing was held on the motion to allow Judge Daryl Colson, the county's juvenile court judge, to hear by interchange DCS's "Intervening Petition for Dependency and Neglect," and other necessary review hearings. With all the parties in agreement with the arrangement, the chancellor found that such would promote "judicial economy to have one hearing." In an order filed on November 14, 2022, Overton County Chancellor Ronald Thurman ordered that Juvenile Court Judge Colson, "shall be permitted to hear [DCS]'s Intervening Petition [for Dependency and Neglect] by interchange, and all future post-dispositional proceedings …." Thereafter the court granted an amended intervening complaint by DCS requesting that Micah Jr. be placed in DCS custody due to truancy.[4] That petition further alleged that Ms. Page had engaged in inappropriate behavior, including discussing ongoing DCS negotiations with Micah Jr. The chancery court issued an order that day placing Micah Jr. in DCS's custody.

Judge Colson subsequently conducted an adjudicatory and dispositional hearing in both chancery court cases on February 8, 18, 22, and April 19, 2023. He made detailed findings of fact and conclusions of law in orders entered in each case:

> The Court finds as a fact that the child KrystaJade M[.] was the victim of abuse and that abuse occurred at the hands of Charles Young. The Court finds that the abuse was of the nature of a sexual offense and committed by Charles Young against this minor child. The Court finds that that abuse occurred while the child was in the care, custody, and control of Ms. Kandy Page.

---

[4] In an order entered January 18, 2023, the chancery court observed that Ms. Clark "stipulates [the children are] … dependent and neglected" … because [their] need exceeded the care that Sahvanna Clark can provide at this time.

The Court finds that prior to that abuse occurring, that Mr. Young had been alleged to have committed a sexual offense against another child. The Court finds that Ms. Page was aware of that accusation. The Court finds as a fact that Ms. Page disregarded that accusation. The Court finds as a fact that Ms. Page allowed Mr. Young to continue to have overnight visitation with KrystaJade. The Court finds that Ms. Page did not adequately protect KrystaJade. The Court finds that Ms. Page was derelict in her duties as a custodian.

The Court finds as a fact that KrystaJade was the victim of physical abuse. The Court finds as a fact that the alleged perpetrator of that physical abuse was Kandy Page. The Court finds as a fact that Kandy Page struck the child in the head and in the stomach. The Court finds as a fact that that testimony was corroborated by Gwyndalynn. The Court finds as a fact that that testimony was corroborated by Micah H[.], Jr. The Court finds as a fact that that testimony is consistent with the disclosure the child made to the therapist. The Court finds as a fact that Ms. Page[’s] … credibility has been successfully impeached on six separate occasions during this trial.

The Court finds as a fact that Ms. Page disregarded the Court order in which she was ordered not to have overnight visitation with these children. The Court finds that she on her own took the initiative to violate that court order and to have visitation with these children.

The Court finds as a fact that this Court ordered that Wendell Clutter[5] was not to be around these children. The Court finds as a fact that in December of 2022, that Ms. Page allowed him to be around, and that her credibility on the issue of Mr. Clutter’s involvement is and has been successfully impeached.

The Court finds that Ms. Page has a history of 22 referrals being filed by [DCS] relating all the way back to the removal of her own children for sexual abuse. This Court previously found in 2001 that she was a non-believing, non-protecting parent that resulted in her own children being removed. The Court finds that history has again repeated itself and that Ms. Page is in fact again a non-believing, non-protecting parent.

Simply put, the Court finds as a fact that there is just too much trauma that occurs while children are in the care, custody, and control of Kandy Page. This Court finds as a fact that Ms. Page instructed the children to lie, conceal,

---

[5] A registered violent sex offender and ex-husband of Ms. Page.

and to deprive [DCS] of involvement, that even though that testimony was denied by Ms. Page, the Court finds that her testimony was again impeached by the other children, along with the other workers.

The Court finds as a fact that Ms. Page has engaged in excessive and inappropriate punishment, most applicably to KrystaJade, in which she struck her about the head …. She also required the child to carry rocks, to run, to sleep on the porch without adequate clothing and blankets. The Court finds that to be inappropriate.

… Mr. Young testified that he witnessed Ms. Page striking KrystaJade about the head to the extent that her glasses went flying. He witnessed that the child was deprived of food, and he witnessed the child sleeping on the front porch without adequate food or clothing. This is consistent with what the testimony was of Ms. Sarah H[.], which was consistent with what she disclosed that she endured when she was a child.[6] The Court finds that to be inappropriate. The Court finds that to be severe abuse ….

The Court finds that Ms. Page, knowing that KrystaJade is a child with significant mental health issues and a significant history of self-harm, woefully failed in a parent and guardianship role on an occasion in which the child was permitted or instructed to jump out of a car. The Court finds that there is simply no acceptable explanation for that. The Court finds that the explanation that Ms. Page gave is inconsistent with what the testimony was from the independent witnesses, being the child's counselors, and the Court further finds that Ms. Page did not seek adequate medical care and only had to be instructed to do so at the be[h]est of DCS. The Court finds that that's a complete and utter failure of parenting. The Court finds that as a result of that, that KrystaJade is the victim of severe abuse, and that the perpetrator of that severe abuse is Ms. Kandy Page. The Court finds that her conduct and behavior exposed this child to significant threat of harm, significant threat of death, and the Court finds those findings by clear and convincing evidence.

The Court further finds that there has been a complete and utter unexplainable cycle of sex abuse in this home. It is almost astonishing the amount of sex abuse that has occurred in one home. It is almost astonishing that despite that sex abuse, that you would marry a man … who had engaged in a violent rape of a random woman at gunpoint and expose him to [the] children, knowing, that they had been the victims of sex abuse. Combine that moving forward with the fact that you have a child—a young child who also made a disclosure of sex abuse, knowing that, doing nothing about that. The

---

[6] Sarah H. is Ms. Page's daughter and KrystaJade's aunt.

Court acknowledges that there has [been] some testimony which the Court acknowledges as being perhaps conflicting, but whether or not the child was coached or not, the Court realizes the child was four years of age. However, a prudent parent would take steps to ensure that that person is not around another child at all. That was not done here. In fact, the contrary was done here, and this child was allowed—KrystaJade, I'm speaking of, was allowed to spend the night with your approval with this man knowing those issues.

When you take the whole picture into account, Ms. Page, the Court finds that it would be safer to place these children in a den of copperheads than it would be to place them in your custody, and for that reason the Court makes the following conclusions of law: That these children are the victims of abuse.

In addition, the Court finds that Micah … [has] significant truancy issues. … The Court finds that once Ms. Page was concerned that the children were going to be removed, that she actively engaged in trying to secrete the children to the point that she absconded with the children ….

In the "Adjudicatory and Dispositional Hearing Order," entered May 12, 2023, Judge Colson observed that the "finding of dependency and neglect" made in this case:

is before the court in kind of an unusual posture. There are two matters that the court is hearing by interchange for chancery court. Those are Case Number[s] 22-CV-10 and 22-CV-11. Those are here today based on an intervening petition filed by [DCS] pertaining to … KrystaJade … and Micah …, in which a petition was filed by Ms. Kandy Page to adopt those two children. Prior to that adoption occurring, [DCS] filed an intervening petition to allege the best interest factors, as well as those children are in fact dependent/neglected as a result of Ms. Page's behavior. That matter is before the court today for an adjudication on those issues….

The chancery court found that DCS had carried its burden of proof that KrystaJade and Micah Jr. were dependent and neglected. Specifically, the court found, inter alia, that Ms. Page failed to adequately protect KrystaJade, instructed the children to lie to DCS, engaged in excessive punishments, perpetrated severe child abuse against KrystaJade, and absconded with the children to avoid DCS. The court further determined that the best interest factors in Tennessee Code Annotated section 36-6-106 weighed against placing the children in Ms. Page's custody and that the children would remain in DCS custody. Accordingly, the court dismissed the adoption petitions based on its findings of fact and consideration of the best interest of the children. Ms. Page thereafter filed this timely appeal.

- 6 -

## II. ISSUE

The issue raised before us by Ms. Page is as follows:

Whether the chancery court had subject matter jurisdiction to declare the children dependent and neglected.

## III. STANDARD OF REVIEW

"[S]ubject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). A court obtains subject matter jurisdiction from either a statutory or constitutional provision. *Cox v. Lucas*, 576 S.W.3d 356, 359 (Tenn. 2019); *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). "The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought." *Staats*, 206 S.W.3d at 542 (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Therefore, when a court's subject matter jurisdiction is challenged, the first step is to "ascertain the nature or gravamen of the case," and then to "determine whether the Tennessee Constitution, the General Assembly, or the common law have conferred on [the court] the power to adjudicate cases of that sort." *Id.* Without jurisdiction, the orders and judgments entered by courts over the subject matter of a dispute are void. *In re Estate of Trigg*, 368 S.W.3d at 489 (citing *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 497 (1955)). "Whether a court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 602 (Tenn. 2013) (citing *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012)).

"The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *First Am. DI Co. v. Franklin-Murray Dev. Co., L.P*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001) (citing Tenn. R. Civ. P. 12.08; Tenn. R. App. P. 13(b)). "A court's subject matter jurisdiction . . . . does not depend on the conduct or agreement of the parties, and thus the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (internal citations omitted).

## IV. DISCUSSION

The court's role in construing statutes is "to ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Whenever possible, we "apply the plain meaning without complicating the task." *In re Sidney J.*, 313 S.W.3d 772, 774 (Tenn. 2010). "In Tennessee, the adoption statutes are to be strictly construed since  they are in

derogation of the common law." *In re K.A.Y.*, 80 S.W.3d 19, 23 (Tenn. Ct. App. 2002).

Ms. Page primarily argues that the chancery court lacked subject matter jurisdiction to declare KrystaJade and Micah Jr. dependent and neglected. Under Tennessee law, juvenile courts hold exclusive and original jurisdiction over proceedings to determine whether a child is dependent or neglected, and "[w]hen jurisdiction has been acquired [by D&N proceedings], such jurisdiction shall continue *until* … a petition for adoption is filed regarding the Tennessee Code Annotated section 36-1-116(f)…." *See* Tenn. Code Ann. § 37-1-103(c) (emphasis added); *In re D.Y.H.*, 226 S.W.3d 327, 330 (Tenn. 2007) (noting the exclusive jurisdiction continues until either "(1) the case is dismissed; (2) the custody determination is transferred to another court; (3) a petition for adoption is filed; or (4) the child reaches the age of eighteen.").

We have held that when a petition for adoption is filed, "jurisdiction over all matters related to the child, other than those regarding delinquency, unruly or truant acts, transfers to the court where the adoption petition is filed." *In re Carlee A.*, No. W2020-01256-COA-R3-PT, 2022 WL 225640, at *12 (Tenn. Ct. App. Jan. 26, 2022) (quoting Dawn Coppock, *Coppock on Tennessee Adoption Law* 43 (2017)). Tennessee Code Annotated § 36-1-116(f)(1)-(2) comes into play, providing in pertinent part:

> (1) Upon the filing of the [adoption] petition, the [adoption] court shall have exclusive jurisdiction of all matters pertaining to the child….
> (2) [A]ny proceedings that may be pending seeking the custody … of the child …who is in the physical custody of the petitioners on the date the petition is filed … shall be suspended pending the court's orders in the adoption proceeding, and jurisdiction of all other pending matters concerning the child … shall be transferred to and assumed by the adoption court; provided, that until the adoption court enters any orders affecting the child's custody … as permitted by this part, all prior parental or guardian authority, prior court orders regarding custody or guardianship, or statutory authority concerning the child's status shall remain in effect. Actions suspended by this section, regardless of the stage of adjudication, shall not be heard until final adjudication of the action for …adoption regarding the same child, even if such adjudication of the … adoption will render the custody … action moot.

Tenn. Code Ann. § 36-1-116(f)(1)-(2) (emphasis added).[7]

---

[7] Subsections (1) and (2) each reference an exception for "delinquency" matters. *See* Tenn. Code Ann. § 36-1-116(f)(1)-(2) ("except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37"). However, D&N proceedings are distinct from "delinquency" proceedings; accordingly, the delinquency exceptions in subsections (1) and (2) do not apply to the case at bar. *In re Autumn D.*, No. E2022-00033-COA-R3-CV, 2022 WL 14309048, at *3 n. 5 (Tenn. Ct. App. Oct. 25, 2022).

In *In re Tyler G.*, No. M2016-02170-COA-R9-PT, 2017 WL 1736707 (Tenn. Ct. App. May 3, 2017), this court elaborated on an adoption court's exclusive jurisdiction as follows:

> [O]nce an action is filed, the court acquires exclusive jurisdiction until the conclusion of the case. "It is the rule in Tennessee that the [c]ourt which first acquires the matter, takes the exclusive jurisdiction to end the matter." *Wilson v. Grantham*, 739 S.W.2d 776, 777 (Tenn. Ct. App. 1986) (citing *Robinson v. Easter*, 208 Tenn. 147, 344 S.W.2d 365 (1961); *Tallent v. Sherrell*, 27 Tenn. App. 683, 184 S.W.2d 561 (1944); *Spencer v. Goodlett*, 104 Tenn. 648, 58 S.W. 322 (1900)). "[E]xclusive jurisdiction" means "[a] court's power to adjudicate an action or class of actions to the exclusion of all other courts." *Black's Law Dictionary* (10th ed. 2014). This common law rule has been expanded by statute in adoption proceedings. Indeed, once an adoption petition is filed, the adoption court acquires "exclusive jurisdiction of all matters pertaining to the child[,]" and "jurisdiction of all other pending matters concerning the child ... shall be transferred to and assumed by the adoption court[,]" subject to certain exceptions not present here. Tenn. Code Ann. § 36-1-116(f). This rule applies even where a dependency and neglect proceeding was ongoing in juvenile court at the time the adoption was filed. *See* Tenn. Code Ann. § 37-1-103(c) (providing that juvenile court's exclusive jurisdiction is terminated upon the filing of an adoption petition). …

2017 WL 1736707, at *3.

In 2019, the legislature amended Tennessee Code Annotated section 37-1-103 to clarify that circuit and chancery courts retain jurisdiction over domestic relations matters, even when allegations in such cases might rise to a finding of D&N. As observed by Ms. Page's counsel, the amended statute adds the following: "Notwithstanding this section, nothing in subdivision (a)(1) shall be construed to preclude a court from exercising domestic relations jurisdiction pursuant to title 36, regardless of the nature of the allegations, unless and until a pleading is filed or relief is otherwise sought in a juvenile court invoking its exclusive original jurisdiction." Tenn. Code Ann. § 37-1-103(g) (Act of April 18, 2019, 2019 Tenn. Pub. Acts ch. 167). The Tennessee Supreme Court interpreted this statute shortly after its enactment. In *Cox v. Lucas*, the Court held that a circuit court retained subject matter jurisdiction over a post-divorce petition to modify parenting plan, even if the petition alleged facts tantamount to a claim of D&N. 576 S.W.3d 356, 357-8 (Tenn. 2019).

Thus, in the instant case, pursuant to Tennessee Code Annotated section 36-1-116(f), exclusive jurisdiction over KrystaJade and Micah Jr. was assumed by the chancery court on February 16, 2022, when Ms. Page, who had physical custody at the time, filed petitions to terminate the parental rights and to adopt the children. As such, it is clear that

once Ms. Page filed her adoption and termination petitions, the chancery court acquired exclusive jurisdiction over this matter to the exclusion of all other courts.

A few months later, DCS exercised its statutory right to intervene and filed its complaints under Tennessee Code Annotated section 36-1-116(k) in the chancery court and its D&N petitions under Title 37 in the juvenile court. A review of the record reveals that DCS's chancery court complaints did not request a D&N adjudication. At the start of trial, however, DCS did request during its opening statement that the court make a D&N finding. DCS's attorney stated as follows:

> [W]e've consolidated our hearing today to be heard in front of you by interchange concerning Micah H[.] case and KrystaJade's case. So this case is being heard as far as part of the chancery court—our petition filed in chancery court and our petition filed in juvenile court ….
>
> * * *
>
> So, Your Honor, what we're here for today is to adjudicate our original petition that got us involved, asking for a finding of dependency and neglect as to … [the] children as to Kandy Page, who we removed custody from ….

Tennessee Code Annotated section 36-1-116(k) permits the adoption court to:

> [M]ake any necessary orders upon its own motion or upon the sworn complaint of the department . . . for the protection and welfare of the child, including emergency ex parte orders for the immediate care and protection of the child . . . .[t]he ex parte order may direct the removal of the child from the custody of the prospective adoptive parents. § 36-1-116(k)(2);
>
> [M]ake such orders as are necessary to protect the child and may continue or place temporary legal custody of the child with the department or a licensed child-placing agency or any other suitable persons approved by the department or a licensed child-placing agency or licensed clinical social worker after a preliminary hearing. § 36-1-116(k)(5);
>
> [S]et a final hearing concerning the allegations involving the prospective adoptive parents within thirty (30) days, except for good cause shown in an order entered by the court. § 36- 1-116(k)(6); and
>
> [U]pon clear and convincing evidence at a final hearing . . . may remove the child from the custody of the prospective adoptive parents and may make any other orders necessary for the child's welfare and best interests, including an alternate custody or guardianship order for the child, and the court may

dismiss the adoption petition as provided in § 36-1-118. § 36-1-116(k)(7).

In response to DCS's intervening complaints, the chancery court removed custody from Ms. Page via ex parte emergency order, making the requisite findings. After initially placing custody with Ms. Clark, DCS later requested custody of the children be removed to the department in amended intervening complaints. After a final hearing, the court ruled, based on clear and convincing evidence, that the best interest factors weighed against placing the children in Ms. Page's custody, dismissed her adoption petitions, and ordered that custody shall remain with DCS. The chancery court properly exercised its jurisdiction under Tennessee Code Annotated section 36-1-116(k)(7) in making these rulings.

## V. CONCLUSION

For the reasons stated, the chancery court's judgment awarding custody of the children to DCS and dismissing the adoption petitions is affirmed. Costs of the appeal are taxed to the appellant, Kandy Page.

_____
JOHN W. MCCLARTY, JUDGE